**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CHRISTOPHER AVELLONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-21-1108-SLP |
| | ) | |
| KELLY RAE BRISTOL, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION TO DISMISS

Defendant KELLY RAE BRISTOL ("Bristol" or "Defendant"), pursuant to FED. R. CIV. P. 12(b)(6), respectfully requests this Court to dismiss all claims in the Complaint filed by Plaintiff CHRISTOPHER AVELLONE ("Avellone" or "Plaintiff"). In support of her Motion to Dismiss, Defendant states that Plaintiff's First Cause of Action should be dismissed because the claim is time barred by the applicable statute of limitations. Moreover, Plaintiff's Second, Third, Fourth, Fifth, and Sixth Causes of Action should be dismissed because they do not state facts sufficient to support a plausible claim for relief.

## **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION .................................................................................................. 1

II.    STANDARD OF REVIEW ................................................................................... 2

III.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 2

    A.     Factual Background ................................................................................... 2

    B.     Procedural Background ............................................................................. 4

IV.    ARGUMENT AND AUTHORITIES .................................................................. 4

    A.     Plaintiff's Claims Are Each Barred By The Statue Of Limitations ............. 4

        1.     Plaintiff's Libel Claim is Barred By The Statute Of
            Limitations. ..................................................................................... 4

        2.     Plaintiff Cannot Avoid The Libel Statute Of Limitations By
            Pleading Other Causes Of Action That Sound In Libel. ................... 6

    B.     Plaintiff's Claims Each Fail On The Merits. ................................................ 7

        1.     Plaintiff's Libel And False Light Claims Fail Because He Has
            Not Pled Actual Malice. ................................................................... 7

        2.     Plaintiff's Claims Fail Because The Statements And Retweet
            Are Privileged And Not Actionable. ............................................... 10

        3.     Plaintiff fails to state a claim for intentional infliction of
            emotional distress. ......................................................................... 12

        4.     Plaintiff Fails To State A claim For Tortious Interference
            With Current Or Prospective Contracts Or Opportunities. .............. 14

V.     CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ................................................... 2

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................ 2, 5

*Branum v. Orscheln Farm and Home, LLC*,
2019 WL 2570527 (E.D. Okla. June 20, 2019) ......................... 13

*Brock v. Thompson*,
948 P.2d 279 (Okla. 1997) ........................................... 12

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
861 F.3d 1081 (10th Cir. 2017) ................................. 9, 11, 12

*Cepeda v. Cowles Magazines & Broad., Inc.*,
392 F.2d 417 (9th Cir. 1968) ........................................ 8

*Coleman v. Grand*,
523 F.Supp. 3d 244 (E.D.N.Y. 2021) ............................... 9, 10

*Computer Publications, Inc. v. Welton*,
49 P.3d 732 (Okla. 2002) ............................................ 13

*Digital Design Group, Inc. v. Information Builders, Inc.*,
24 P.3d 834 (Okla. 2001) ............................................ 5

*Eddy v. Brown*,
715 P.2d 74 (Okla. 1986) ............................................ 13

*Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*,
945 F. Supp. 220 (D. Kan. 1996) ..................................... 7

*Gaylord Entertainment Co. v. Thompson*,
958 P.2d 128 (Okla. 1998) ........................................... 12

*Gertz v. Robert Welch, Inc.*,
418 U.S. 323 (1974) ................................................. 7

*Grogan v. KOKH, LLC*,
  256 P.3d 1021 (Okla. App. 2011) ................................................................. 9

*Harris v. AmeriGas Propane, Inc.*,
  Case No. CV-12-860-RBJ-MEH, 2012 WL 7051302 (D. Colo. Dec. 5,
  2012) ............................................................................................................ 14

*Herbert v. Oklahoma Christian Coalition*,
  992 P.2d 322 (Okla. 1999) ............................................................................ 8

*Hetronic Int'l, Inc. v. Rempe*,
  99 F. Supp. 3d 1341 (W.D. Okla. 2015) ...................................................... 15

*Hicks v. Central Oklahoma United Methodist Retirement Facility, Inc.*,
  423 P.3d 684 (Okla. Civ. App. 2016) .......................................................... 12

*Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*,
  175 F.3d 848 (10th Cir. 1999) ...................................................................... 7

*Jordan v. World Publ. Co.*,
  872 P.2d 946 (Okla. Ct. App. 1994) .................................................. 6, 7, 10

*Loven v. Church Mut. Ins. Co.*,
  452 P.3d 418 (Okla. 2019) .................................................................... 14, 15

*Luper v. Black Dispatch Pub. Co.*,
  675 P.2d 1028 (Okla. Civ. App. Ct. 1983) ................................................... 8

*Magnusson v. New York Times Co.*,
  98 P.3d 1070 (2004) ............................................................................. 10, 11

*Miller v. Miller*,
  956 P.2d 887 (Okla. 1998) .......................................................................... 13

*Mineral Acquisitions, LLC v. Hamm*,
  477 P.3d 1159 (Okla. Civ. App. 2020) ........................................................ 6

*Miskovsky v. Oklahoma Pub. Co.*,
  654 P.2d 587 (Okla. 1982) .......................................................................... 11

*Monaco v. Quest Diagnostics, Inc.*,
  Case No. 08-2500-KHV, 2010 WL 3843622 (D. Kan. Sept. 24, 2010) ...... 13

*Nelson v. American Hometown Publishing, Inc.*,
  333 P.3d 962 (Okla. Ct. Civ. App. 2014) ............................................. 6, 10

*New York Times Co. v. Sullivan*,
  376 U.S. 254 (1964) ........................................................................................ 9

*Nwakpuda v. Falley's, Inc.*,
  14 F. Supp. 2d 1213 (D. Kan. 1998) ........................................................... 14

*Pace v. Swerdlow*,
  519 F.3d 1067 (10th Cir. 2008) .................................................................... 2

*Phelps v. Hamilton*,
  59 F.3d 1058 (10th Cir. 1995) ...................................................................... 9

*Price v. Walters*,
  918 P.23d 1370 (Okla. 1996) ...................................................................... 11

*Prickett v. Sashay Corp. Servs., LLC*,
  No. 15-CV-190-TCK-FHM, 2015 WL 6759486 (N.D. Okla. Nov. 5,
  2015) ............................................................................................................. 13

*Radial Engines, Ltd. v. WACO Classic Aircraft Corp.*,
  Case No. CIV-16-0456-HE, 2016 WL 5818614 (W.D. Ok. Oct. 4, 2016) ................. 5

*Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.*,
  867 P.2d 1241 (Okla. 1993) .......................................................................... 6

*Showler v. Harper's Mag. Found.*,
  222 F. App'x 755 (10th Cir. 2007) .............................................................. 13

*Spacecon Specialty Contractors, LLC v. Bensinger*,
  713 F.3d 1028 (10th Cir. 2013) .................................................................... 9

*State of South Dakota v. Kansas City Southern Industries, Inc.*,
  880 F.2d 40 (8th Cir. 1989) .......................................................................... 7

*Stillwell v. Brakhage*,
  No. CIV-17-262-R, 2017 WL 11296879 (W.D. Okla. July 14, 2017) ................. 15, 16

*Talley v. Time, Inc.*,
  923 F.3d 878 (10th Cir. 2019) .................................................................. 9, 10

*UMB Bank N.A. v. Asbury Communities, Inc.*,
  No. 20-CV-160-TCK-CDL, 2021 WL 4712634 (N.D. Okla. Oct. 8,
  2021) ............................................................................................................. 15

*Weathers v. Fulgenzi*,
  884 P.2d 538 (Okla. 1994) ............................................................................ 6

*Wilspec Techs., Inc. v. Dunan Holding Group Co.*,
204 P.3d 69 (Okla. 2009) ............................................................................ 14

**Statutes**

Okla. Stat. tit. 12, § 95(4) .......................................................................... 5

61868451.1

## I.    <u>INTRODUCTION</u>

This litigation is the latest assault from Plaintiff on his mission to punish women who speak out about his inappropriate behavior. This is also his most egregious effort yet. Avellone's libel claim is based on June 2020 statements. He brought this litigation in October 2021, nearly 16 months later. His claim is indisputably time-barred. Instead of accepting this reality, his verified Complaint is structured around the facially implausible statement that he discovered Bristol's public statements in October 2020—*four months after* he contends he lost employment as a result of those same statements. This—along with asserting a variety of additional causes of action that are nothing but a repackaged libel claim—is a blatant effort to plead around the specific defenses to a libel claim, including the statute of limitations. Courts do not permit such clever efforts to circumvent the statute of limitations, and thus the remainder of his tort claims fail as well. Further, even if his claims were not time-barred, each and every one fails on the merits. For this reason as well, this court should dismiss Avellone's Complaint in its entirety.

In June 2020, Bristol—along with several other women—spoke out about her negative interactions with Avellone—a well-known video game developer and public figure. Given the numerous accusations against Avellone, several entities severed ties with him shortly thereafter. Avellone, rather than learning from his mistakes, decided to go after two of the women who spoke out, suing them in California state court despite their lack of connection with California and modest means. The California court properly quashed the summons served on Bristol because California had no personal jurisdiction over her.

Avellone then filed this litigation in Oklahoma state court alleging defamation, intentional infliction of emotional distress, and several additional torts. In addition to being time-barred, his libel claim fails because Bristol's statements are the type of hyperbolic and exaggerated language about an issue of public concern that are protected under the fair comment privilege, and because Avellone—a public figure—cannot allege actual malice. Each of his other claims must fail where his libel claim fails.

Avellone's additional causes of action fail on their own merits as well. His false light claim fails because he cannot allege actual malice—a required element. His intentional infliction of emotional distress claim fails because he has not alleged the requisite outrageous conduct to support such a claim. His tortious interference claims fail because he has failed to allege any facts that Bristol knew of his potential business entanglements or intended to disrupt them. His punitive damages claim is not an independent claim at all.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). This requirement serves (1) "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense" and (2) "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008).

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 129 S.Ct. at 1949. Thus, a pleading that offers only "labels and conclusions," "naked assertions devoid of further factual enhancement" or "a formulaic recitation of the elements of a cause of action will not do" and must be dismissed. *Id.* "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. A plaintiff must plead specific factual allegations to support each claim such that they "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## III.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Background.

Avellone calls himself an "established computer game writer, having written games for blue-chip gaming franchises including *Star Wars*, *Fallout*, *Dungeons and Dragons*, and *Dying Light*." (Compl., ¶ 4.) Industry press describes him as "prominent" and "acclaimed"

and one of the "industry greats." (RJN, Ex. 1 at 25, 29 (California Complaint ("CA Compl."), Exs. 2–3).)

Bristol, along with her codefendant in the California litigation, Karissa Barrows, are gaming fans who go to conventions. In June 2020 several women—including Barrows, Bristol and other women whose statements are not part of this litigation—spoke out publicly concerning their encounters with Avellone. In response to an article about Avellone, Barrows responded on Twitter.com ("Twitter") describing Avellone's inappropriate behavior toward her. Avellone includes a variety of statements from Barrows in his Complaint, alleging that they are false and libelous. (Compl. ¶¶ 20 – 22.) Bristol then responded to several of Barrows' statements on Twitter relaying her own experience with Avellone, (Compl. ¶¶ 22–24), and made an additional statement on Reddit.com ("Reddit"). (*Id*. ¶ 27.)

Avellone's allegations against Bristol are based on two categories of statements: (1) her "retweeting" of Barrows' statements (the "Retweet"), and (2) Bristol's own statements on Twitter and Reddit ("Bristol's Statements"). (Compl. ¶¶ 20–29.) Bristol's Statements at issue are the following:

June 20, 2020 statements on Twitter.com:

> "I've never admitted this on main, but he groped me repeatedly at D*C [Dragon Con] 2014, by Pulse. Every time you or his gf weren't looking, his hand was on my ass & he was trying to get me to go to his room. I told him don't f[*]ck my friends' boyfriends and to stay the f[*]ck away from me… I swear he ONLY stopped when Scott gave him the dirtiest look I've ever seen. He was ready to turn Avellone into paste. And I somehow came away from that feeling like I'd done something to bring it on. I shook his hand when we were introduced. That's it. That's all it took." "He knew exactly what he was doing. You didn't see it because he was just that practiced at it. And I was so shocked that I froze. (I hate that freezing is m response to s[*]it like this.)" (Compl. ¶ 23.)

A June 22, 2020 statement on Twitter.com:

> "Sorry I didn't have 360 degree cameras trained on my body, nor in-ear mics set to record every foul word he whispered in my ear. I'll be sure to have all that on me the next time I set out to be assaulted for the crime of being a woman." (Compl. ¶ 24.)

A June 23, 2020 statement on Reddit.com:

> "As for my thoughts on Avellone? He's a sick man. I hope he gets help. But what happens to his or any other predator's career is on them, not their victims. Companies are letting him go because he is a liability. Predatory behavior drives talented people aware every day, and causes internal strife within teams. No level of talent is worth that, and I'd argue that it negates any talent a person has. His 'storied career' is NOT more important to the industry that the careers, talents, and well-being of the people he's harmed." (Compl. ¶ 27.)

Avellone responded to Barrows' initial statements on June 20 and June 21, 2020, expressing regret about the state of his relationship with Barrows. (*See* RJN, Ex. 2.) Yet in June 2021 he apparently changed his mind, and filed litigation against Barrows and Bristol in California. The California court quashed the subpoena as to Bristol, correctly concluding that it lacked personal jurisdiction. (Compl. ¶ 33.) Avellone then filed this litigation.

### B. Procedural Background

On October 13, 2021 Avellone filed this Complaint against Bristol in Oklahoma State District Court in Oklahoma County, case No. CJ-2021-4340. On November 23, 2021 Bristol removed this action to the Western District of Oklahoma.

## IV. ARGUMENT AND AUTHORITIES

### A. Plaintiff's Claims Are Each Barred By The Statue Of Limitations.

#### 1. Plaintiff's Libel Claim is Untimely.

It is undisputed that the statements at issue were published in June 2020. (*See* Compl. ¶¶ 20–29.) Avellone filed this lawsuit on October 13, 2021. (*See* Compl.) With a narrow

exception inapplicable here, a libel action accrues on the date of publication. *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 840 (Okla. 2001). Thus Avellone's cause of action for libel is barred by Oklahoma's one-year statute of limitations. Okla. Stat. tit. 12, § 95(4).

In an apparent attempt to get around the statute of limitations and invoke Oklahoma's "discovery rule," Avellone alleges that he did not learn of the tweets until October 14, 2020—exactly one day shy of a year of filing this litigation. This allegation does not get "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. This supposed discovery date is implausible based on the face of the Complaint itself.  Avellone alleges that he lost employment opportunities *in June 2020* based on Bristol's statements, and that the companies who severed ties with him *publicly stated* that it was because of the allegations around his behavior. (Compl. ¶¶ 20–29.) This is logically incompatible with the allegation that he did not know of the statements until October 2020. Further, Bristol's June 20 and 22 comments were posted in response to a Twitter thread that responded to an article about Avellone, and to which Avellone had also responded.[1] (RJN Ex. 2 (Avellone responding on June 20 and June 21, 2020 to the initial thread).) Avellone was plainly aware of the thread and following it.

Even if Avellone's allegations about his October 14 discovery were plausible—which they are not—this is irrelevant. If Avellone did not know of Bristol's Retweet and Statements, he should have. Under Oklahoma's "discovery rule" the statute of limitations is tolled only where "the publication is likely to be concealed from the plaintiff or published in a secretive manner which would make it unlikely to come to the plaintiff's attention." *Radial Engines, Ltd. v. WACO Classic Aircraft Corp.*, Case No. CIV-16-0456-HE, 2016 WL 5818614, at *7 (W.D. Ok. Oct. 4, 2016) (applying Oklahoma discovery rule where

---

[1] A "thread" refers to a series of tweets and responses to those tweets that all appear in a chain. A person looking at a "thread" on Twitter.com can see if those tweets have been responded to or retweeted.

claims based on private letters); *see also Mineral Acquisitions, LLC v. Hamm*, 477 P.3d 1159, 1173 (Okla. Civ. App. 2020) (discovery rule only delays accrual until an injured party knows of, *or in the exercise of reasonable diligence, should have known* of the alleged libelous statements); *Weathers v. Fulgenzi*, 884 P.2d 538, 540-41 (Okla. 1994) (similar). Bristol's statements were published on the internet where anyone could read them, and Avellone himself had already seen and responded to portions of the Twitter thread. (RJN Ex. 2 (Avellone's 6/20/20 response to Barrows' tweet).) Further, a reasonable person informed that employers were severing ties with him because of internet allegations *would read those allegations*.

2. <u>**Plaintiff Cannot Avoid The Libel Statute Of Limitations By Pleading Other Causes Of Action That Sound In Libel**</u>.

Avellone may not plead different torts based on the identical facts "to circumvent defenses to defamation actions, including shorter statute of limitations provisions." *Nelson v. American Hometown Publishing, Inc.*, 333 P.3d 962, 969 (Okla. Ct. Civ. App. 2014). "[W]hen the nature of the action is a libel claim" courts require "adherence to the standards for defamation cases." *Ibid.*; *see also Jordan v. World Publ. Co.*, 872 P.2d 946, 947–48 (Okla. Ct. App. 1994) (a plaintiff cannot rely on the same set of operative facts to recast a defamation claim as a different tort claim). This rule is with good reason. Courts recognize that defamation claims are implicate unique First Amendment issues. *Id*. Allowing a plaintiff to shoehorn a speech-based claim into another tort claim with a longer statute of limitations period would effectively permit plaintiffs to extend the statute of limitations for defamation.[2]

---

[2] Avellone's cause of action for punitive damages is just "an element of recovery of the underlying cause[s] of action; it does not constitute a separate cause of action…if there is no recovery on the underlying claim, there can be no recovery of punitive damages." *Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.*, 867 P.2d 1241, 1247 (Okla. 1993) (citing *Eckels v. Taverse*, 362 P.2d 680, 683 (Okla. 1961)).

Oklahoma courts have specifically recognized the danger of recasting a libel claim as a claim for intentional infliction of emotional distress ("IIED") because plaintiffs could "use the tort of negligent infliction of emotion distress to overcome defenses to defamation actions, [including] to avoid short statutes of limitations for defamation." *Jordan*, 872 P.2d at 947–48 (citing *Decker v. Princeton Packet*, 561 A.2d 1122, 1129 (N.J. 1989).) Courts likewise reject recasting defamation claims as tortious interference claims. *See Jefferson County School Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 857 (10th Cir. 1999) (upholding dismissal of claims for intentional interference with contract and with prospective business relations where they were based on speech and the underlying defamation claim failed); *Eddy's Toyota of Wichita, Inc. v. Kmart Corp.*, 945 F. Supp. 220, 224 (D. Kan. 1996) (protected speech cannot form a basis for a tortious interference claims); *State of South Dakota v. Kansas City Southern Industries, Inc.*, 880 F.2d 40, 50 (8th Cir. 1989) (explaining that activities privileged under the First Amendment cannot create liability for tortious interference).

Avellone's additional tort causes of action are based on the identical facts and statements as Avellone's libel claim. (*See generally* Compl.) In other words, they are just an effort to recast the libel claim as different torts. Because Avellone's libel claim is barred by the statute of limitations, his other claims are barred and should be dismissed as well.

    **B.**    **Plaintiff's Claims Each Fail On The Merits.**

        **1.**    **Plaintiff's Libel And False Light Claims Fail Because He Has Not Pled Actual Malice**.

Avellone's libel and false light claims each require a showing of actual malice. "[I]in a libel action brought by [a public figure], there is a constitutional requirement that he plead actual malice, defined as knowledge of or reckless disregard for the truth or falsity of an assertion." *Jordan*, 872 P.2d at 947–48 (upholding dismissal of action where public figure did not plead malice); *see also Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974) (the *New York Times* standard defines the level of constitutional protection appropriate to the

context of defamation of a public person.) A public figure must demonstrate actual malice with "clear and convincing evidence." *Herbert v. Oklahoma Christian Coalition*, 992 P.2d 322, 328 (Okla. 1999). "Those who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures." *Id*. All-purpose public figures include "artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done." *Cepeda v. Cowles Magazines & Broad., Inc.,* 392 F.2d 417, 419 (9th Cir. 1968); *see also Luper v. Black Dispatch Pub. Co.*, 675 P.2d 1028, 1032 (Okla. Civ. App. Ct. 1983) (concluding that a well-known civil rights worker, was a "public figure" by virtue of her civil rights work, radio show, and book).

Avellone is akin to a famous artist, certainly as prominent as a radio show host. He is an industry-leading game designer, having written for "blue chip" gaming franchises. (Compl. ¶ 4.) His California complaint touted his "status in the industry." (RJN, Ex. 1 at 3 (CA Compl. ¶ 8.) Media coverage of him describes him as "prominent," and "a man in a position of power." (RJN., Ex. 1 at 25 (CA Compl. Ex. 2).) Other news articles refers to him as "acclaimed," (RJN, Ex. 1 at 29 (CA Compl. Ex. 3)), and "famed." (*Id*., Ex. 1 at 46 (CA Compl. Ex. 6 at 1).) The allegations about his behavior were widely covered in a variety of media outlets, including such mainstream publications as Business Insider. (Compl. ¶ 29) (*see also* RJN, Ex. 1 at 25–32, 46–49 (CA Compl. Exs. 2-3, 6).) This entire lawsuit stems from comments made in response to an article covering an interview with Avellone on an entertainment industry website. (Compl. ¶ 17.) Avellone also acknowledges that several gaming studios felt the need to make public statements in response to the numerous allegations against him, including those of other women. (Compl. ¶¶ 25–26.) This is sufficient evidence that Mr. Avellone is an "all purpose" public figure and must plead actual malice.[3]

---

[3] Even if Avellone were not considered a public figure, he would nevertheless need to prove actual malice because that statements deal with a matter of public concern. While

Avellone's false light claim also requires a showing of actual malice. "The third element of the false light tort requires proof that [defendant] knew or acted in reckless disregard as to the falsity of the publicized matter…This requirement is virtually identical to the actual malice standard adopted in *New York Times.*" *Grogan v. KOKH, LLC*, 256 P.3d 1021, 1030 (Okla. App. 2011); *see also New York Times v. Sullivan*, 376 U.S. 254 (1964); *Talley v. Time, Inc.*, 923 F.3d 878, 897, n. 19 (10th Cir. 2019) (Oklahoma courts have equated the third element of a false light claim with the *New York Times* actual malice standard).

Avellone cannot establish that Bristol's Statements or Retweet were made with actual malice, and certainly not by clear and convincing evidence. As to the Retweet, to establish actual malice, Avellone must show that Bristol "entertained serious doubts as to the truth" of the statements. *Talley*, 923 F.3d at 897–98. Avellone has not pled and cannot show that Bristol had any reason to doubt the truth of Barrows' statements, much less that she had "serious doubts." In fact the opposite is true. In light of Bristol's own experience with Avellone, as well those of other women that were publicly available on the internet, Bristol would have every reason to believe that Barrows' statements *were true*. As to Bristol's Statements, it would be impossible to show that she was acting in reckless disregard of the

---

Defendant has not found an Oklahoma case directly addressing this, the rule in most states is that statements on matters of public concern are not actionable unless the plaintiff can show actual malice. *See Spacecon Specialty Contractors, LLC v. Bensinger*, 713 F.3d 1028, 1034-35 (10th Cir. 2013) (under Colorado law statements on matters of public concern not actionable unless made with actual malice); *see also Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1109 (10th Cir. 2017) (same); *Phelps v. Hamilton*, 59 F.3d 1058, 1072 (10th Cir. 1995) (under Kansas law statements on matter of public concern not actionable unless made with actual malice). There can be no question that Bristol's Statements—regarding a prominent and powerful man's treatment of women in the gaming industry—are a matter of public concern. *See, e.g.*, *Coleman v. Grand*, 523 F.Supp. 3d 244, 259 (E.D.N.Y. 2021) (concluding that "sexual impropriety and power dynamic in the music industry, as in others, [is] indisputably an issue of public interest").

truth when she relayed her experiences with him and expressed her judgment about his character as a man.[4]

### 2. Plaintiff's Claims Fail Because The Statements And Retweet Are Privileged And Not Actionable.

Bristol's Statements and Retweet are absolutely protected by Oklahoma's fair comment privilege. The fair comment privilege "affords legal immunity for comment by any and all members of the public and extends to virtually all matters of legitimate public interest. Its purpose is to promote the free and open exchange of ideas." *Magnusson v. New York Times Co*., 98 P.3d 1070, 1074 (2004). "[A] statement is generally privileged when it: 1) deals with a matter of public concern; 2) is based on true or privileged facts; and 3) represents the actual opinion of the speaker, but is not made for the sole purpose of causing harm. In making the privilege determination, courts look to the phrasing of the statement, the context in which it appears, the medium through which it is disseminated, the circumstances surrounding its publication, and a consideration of whether the statement implies the existence of undisclosed facts." *Id*.

First, there can be no question that the Statements and the Retweet—concerning groping and harassing of women—deal with a matter of public concern, particularly in the context of the #metoo movement. *See, e.g.*, *Coleman*, 523 F. Supp. 3d at 259 (concluding that "sexual impropriety and power dynamic in the music industry, as in others, [is] indisputably an issue of public interest"). Second, Bristol's statements and retweet are based on true or privileged facts. The Retweet was just her relaying the accusations of another person. Regardless of whether the underlying accusation was ultimately true, the fact that Barrows had made the accusation was true, and a matter of public interest. *See Talley*, 2018 WL 4558993, *4 (media publication's printing of accusations is not actionable

---

[4] Avellone's non-libel torts must fail if his libel claim fails for any reason. Therefore his other tort claims also fail because of his inability to show actual malice. *See generally Nelson*, 333 P.3d 962, 969; *Jordan*, 872 P.2d 946, 947–48.

where the accusations were actually made). Bristol's Statements as to her own experience are likewise privileged because that she felt Avellone's touching constituted groping, that his words were foul or she felt assaulted by them, cannot be proven false. Third, the Retweet and Bristol's Statements represent Bristol's opinion about Avellone and they were made to share her experience, not to cause harm. Even if Bristol's choice of words—such as "foul," "groped," and "predator,"—were "exaggerated criticisms," this is precisely the type of "statements that our society, interested in free and heated debate about matters of social concern, has chosen to protect." *Magnusson*, 98 P.3d at 1077.

Hyperbolic and emotional language is the type of nonactionable "judgmental statement" that is opinionative but not factual in nature. *Id*. at 1076. Oklahoma courts have protected similar statements regarding "botched" surgeries and "devastating" scars, and explained that where the context of the statements includes "emotional rhetoric and moral outrage, listeners are put on notice to expect speculation and personal judgment." *Ibid*. Whether or not someone's touch qualifies as a "grope," their words are "foul," the recipient felt "assaulted" or their behavior is "predatory," is not the type of factual statement that can support a libel claim. *See also Price v. Walters*, 918 P.23d 1370, 1376 (Okla. 1996) (statement that plaintiff "gouged customers" was nonactionable judgmental statement). The use of the word "predator" is no different from terms like "hatchet man," "scalawag," "rake," or "scoundrel," that have been held to be nonactionable judgmental statements. *Miskovsky v. Oklahoma Pub. Co.*, 654 P.2d 587, 594 (Okla. 1982).

Even if not protected by the fair comment privilege, Bristol's Statements and the Retweet are not the type of statements of fact that are actionable as libel because they are not materially false. *See Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1107 (10th Cir. 2017) ("The plaintiff must show the statement is not only false, but "materially false.") "The law of defamation overlooks inaccuracies and focuses on substantial truth…minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge [is] justified." *Id*. (internal citations omitted). Here,

Avellone does not allege that he did not touch Bristol at the Dragon Con convention – regardless of whether that touching could be considered "groping." He also does not allege that he did not whisper in Bristol's ear, regardless of whether his language was "foul." Avellone contends only that he did not "sexually assault" Bristol, which is irrelevant: Bristol never said that he did. (Compl. ¶ 37.) This boils down to Avellone's objections to Bristol's characterization of his conduct, a.k.a her nonactionable opinion. Avellone essentially asks this Court to find that a woman stating her interpretation of a man's touch and whispers is *actionable defamation* if she describes his conduct as the type of creepy and unwelcome conduct that women often encounter. Holding speakers liable for expressing these types of opinions *is not the law in any other context*, and is a dangerous precedent to set for women speaking out about they interpreted a man's touch.

### 3. <u>Plaintiff fails to state a claim for intentional infliction of emotional distress</u>.

Avellone has not sufficiently plead that Bristol's conduct was the type of conduct that is "beyond all possible bounds of decency" and "utterly intolerable in a civilized community" that is required to state a cause of action for IIED. *See Brock v. Thompson*, 948 P.2d 279, 293-94 (Okla. 1997). Intentional infliction of emotion distress is known as the tort of "outrage" and is only found where there is extreme and outrageous conduct coupled with severe emotional distress. *Ibid.*; *see also Gaylord Entertainment Co. v. Thompson*, 958 P.2d 128, 149 (Okla. 1998). To recover damages for IIED, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Hicks v. Central Oklahoma United Methodist Retirement Facility, Inc.*, 423 P.3d 684, 697 (Okla. Civ. App. 2016). The circumstances surrounding the conduct affect whether the conduct is severe. *Id.*

Taking the allegations in Avellone's Complaint as true, at worst, Bristol described her encounter with Avellone in an unfairly harsh or negative light and was overly critical

in her choice of the word "predator." Bristol made only three statements and one Retweet, during a span of a few days in which there was extensive public conversation over Avellone's behavior. This is nowhere near the "outrageous" conduct required to sustain a claim for IIED. Claims of IIED are reserved for only the most egregious situations, typically occurring repeatedly and over extended periods of time. *See, e.g.*, *Computer Publications, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002) (outrageous conduct where a man stalked a woman over the course of years); *Miller v. Miller*, 956 P.2d 887 (Okla. 1998) (question of fact as to whether conduct was outrageous where a woman induced a man to marry her and raise a daughter for over fifteen years while knowing the child was not his, and then revealing this to the child); *Showler v. Harper's Mag. Found.*, 222 F. App'x 755, 761 (10th Cir. 2007) (unauthorized taking and publishing of photo of body in casket insufficient to state claim for IIED).

Courts uniformly hold that insults far worse than referring to someone as a predator do not rise to the level of supporting an IIED claim. *See, e.g.*, *Prickett v. Sashay Corp. Servs., LLC*, No. 15-CV-190-TCK-FHM, 2015 WL 6759486, at *3 (N.D. Okla. Nov. 5, 2015) (insulting and ridiculing Plaintiff about her need for physical therapy insufficient to state IIED claim). The conduct must also be considered in light of the setting in which it took place. *Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986). If there is any place for the use of colorful, emotional, and hyperbolic language, it is Twitter (and Reddit). Given the abysmal standard of discourse in these forums, it is unclear what would be "beyond all possible bounds of decency," but Bristol's Statements and Retweet plainly do not come close.

Finally, even if Bristol's Statements were false—which they are not—false allegations are insufficient to sustain a claim for IIED. *Branum v. Orscheln Farm and Home, LLC*, 2019 WL 2570527, at *5 (E.D. Okla. June 20, 2019) (plaintiff's allegation that she was falsely accused of using a racial slur to a customer were insufficient to support her claim for IIED); *Monaco v. Quest Diagnostics, Inc.*, Case No. 08-2500-KHV, 2010

WL 3843622, at *17 (D. Kan. Sept. 24, 2010) (a false accusation that the plaintiff had threatened to kill a co-worker did not meet the threshold requirement of extreme and outrageous conduct); *Nwakpuda v. Falley's, Inc.*, 14 F. Supp. 2d 1213, 1218 (D. Kan. 1998) (finding the plaintiff who was detained at a grocery store after being falsely identified as an individual who had previously robbed the store failed to meet the threshold showing of extreme and outrageous conduct); *Harris v. AmeriGas Propane, Inc.*, Case No. CV-12-860-RBJ-MEH, 2012 WL 7051302, at *6 (D. Colo. Dec. 5, 2012) (collecting cases where courts found false accusations of criminal conduct were not outrageous and finding that the employees' false accusations of embezzlement against the plaintiff did not constitute outrageous conduct).

### 4.   Plaintiff Fails To State A Claim For Tortious Interference With Current Or Prospective Contracts Or Opportunities.

Avellone's claims for tortious interference with contractual and business relationships and tortious interference with prospective economic advantage (the "tortious interference claims") fail on the merits. The elements of a claim for intentional interference with prospective economic advantage are: (1) existence of a valid business relation or expectancy; (2) knowledge of the relationship or expectance on the part of the interferer; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship has been disrupted. *Loven v. Church Mut. Ins. Co.*, 452 P.3d 418, 425 (Okla. 2019). The elements of a claim for malicious or tortious interference are: (1) interference with an existing contractual or business right; (2) such interference was malicious or wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage. *Wilspec Techs., Inc. v. Dunan Holding Group Co.*, 204 P.3d 69, 74 (Okla. 2009).

Both tortious interference claims require that the interference must be the purpose of the tortfeasor's act, and their motive must include a desire to interfere and disrupt the others'

current or prospective economic business advantage. *Loven,* 452 P.3d at 426. Avellone alleges that "Bristol knew or under the circumstances should have known" about Avellone's contractual and business relationships and prospective opportunities. (Compl. ¶¶ 69, 74.)[5] Avellone makes the conclusory allegations that Bristol "intended to" and "purposely" interfered with these relationships. (Compl. ¶ 69, 74.) "These are the types of formulaic recitation of the elements of a cause of action that do not pass muster under Rule 8." *Stillwell v. Brakhage*, No. CIV-17-262-R, 2017 WL 11296879, at *2 (W.D. Okla. July 14, 2017) (citing *Twombly*, 550 U.S. at 555). Avellone's factual allegations actually support the opposite conclusion. Bristol's Statements on Twitter were made in a back-and-forth exchange with Barrows, and not directed toward any of Avellone's business contacts. (*See* Compl. ¶¶ 20–22.)

Avellone's allegations regarding his prospective economic opportunities are also insufficiently specific to sustain this cause of action. "To show the existence of a valid business relationship or expectancy, '[Defendant] must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof." *Hetronic Int'l, Inc. v. Rempe*, 99 F. Supp. 3d 1341, 1350 (W.D. Okla. 2015). Avellone alleges only that he had "certain prospective economic opportunities and business relationships with third parties, including, but not limited to, Gato Salvaje Studio, Techland and Electronic Arts." (Compl. ¶ 74.) He does not include a single factual allegation about what these prospective opportunities were, beyond whatever contracts already existed.[6] In *Stillwell* the court

---

[5] A claim for tortious interference with prospective economic advantage requires that the alleged interferer have *actual knowledge* of the relationship or expectance, and so Avellone's conclusory allegations that Bristol knew or "should have known," doom that claim entirely. *See Loven,* 452 P.3d at 425.

[6] "A claim for interference with prospective economic advantage is unavailable where the parties' relationship is based on subsisting, not potential, contracts." *UMB Bank N.A. v. Asbury Communities, Inc.*, No. 20-CV-160-TCK-CDL, 2021 WL 4712634, at *4 (N.D. Okla. Oct. 8, 2021) (internal citations omitted).

dismissed similar allegations of a "business relationship with certain third parties" which offered "the probability of economic benefit" because these were insufficient factual allegations to show that plaintiff "had a reasonable assurance of obtaining the prospective business relations." 2017 WL 11296879, at *2. The Court should dismiss Avellone's claims as well.

The cause of action for tortious interference with existing contracts is similarly deficient. "[P]arties claiming tortious interference with business relations [must] identify which contracts or business relationships defendant[] interfered with." *Stillwater*, 2017 WL 11296879, *2. Avellone alleges that he had "contractual and business relationships with certain third parties, including, but not limited to, Gato Salvaje Studio, Techland and Electronic Arts." (Compl. ¶ 68.) This is insufficient to "identify which contracts or business relationships" Bristol allegedly interfered with, and Avellone's tortious interference with contractual and business relationships should be dismissed for this reason as well.

## V.    CONCLUSION

For each of the reasons explained above, this Court should dismiss each of Avellone's causes of action without leave to amend.

Respectfully submitted,

*/s/     Scott E. Kiplinger*
Scott E. Kiplinger, OBA No. 33938
GABLEGOTWALS
499 W. Sheridan Avenue
Oklahoma City, OK  73102
(405) 235-5500
(405) 235-2875 (fax)
 skiplinger@gablelaw.com

***Attorney for Defendant***

## CERTIFICATE OF SERVICE

This is to certify that on December 10, 2021, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Eric D. Wade, OBA No. 19249
ROSENSTEIN FIST & RINGOLD
525 South Main, Suite 700
Tulsa, OK 74103-4508
ericw@rfrlaw.com

***ATTORNEYS FOR PLAINTIFFS***

*/s/ Scott Kiplinger*
Scott E. Kiplinger